JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ROY KAVIN, INC., et al., | Case No. 2:21-cv-06085-FLA (ASx) |
|---|---|
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. 20]** |
| FEDERAL INSURANCE COMPANY, | |
| Defendant. | |

1

## RULING

Before the court is Defendant Federal Insurance Company's ("Federal Insurance" or "Defendant") Motion to Dismiss ("Motion").  Dkt. 20 ("Mot."). Plaintiffs Roy Kavin, Inc. and Jeff Kavin, Inc. (collectively, "Plaintiffs") oppose the Motion.  *See* Dkt. 21 ("Opp'n").  On October 25, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for October 29, 2021.  Dkt. 23; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court grants the Motion and DISMISSES the action without leave to amend.[1]

## BACKGROUND[2]

Roy Kavin, Inc. owns Greenblatt's Deli located at 8017 West Sunset Boulevard in Los Angeles.  Dkt. 1 ("Compl.") ¶ 11.  Jeffrey Kavin, Inc. owns properties located at 8017-8033 West Sunset Boulevard, which it leases to other storeowners, including a UPS Store, Green Dry Cleaners, a Bar/Nightclub, Pamela's Skin Spa, and Habit Hair Salon.  *Id.* ¶ 12.  The properties at 8017-8033 West Sunset Boulevard (the "Properties") are covered under commercial insurance policy number 35349969, which was issued by Defendant for the period of August 1, 2019 to August 1, 2020 (the "Policy").  *Id.* ¶¶ 4, 13-14.  The Policy includes coverage for "Business Income With Extra Expense" losses incurred by Plaintiffs as a result of "direct physical loss or damage" to property (the "Business Interruption Coverage").  *Id.* ¶¶ 55-56.  The relevant portion of the policy provides:

> We will pay for the actual:
> - **business income** loss you incur due to the actual impairment of your **operations**; and

---

[1] The parties have filed multiple notices of supplemental authority and responses thereto, which the court has reviewed and considered.  Dkts. 24, 29-31.

[2] For purposes of the subject Motion, the court treats the following factual allegations of the Complaint as true.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

- **extra expense** you incur due to the actual or potential impairment of your **operations**,

during the **period of restoration**, not to exceed the applicable Limit of Insurance for Business Income With Extra Expense shown in the Declarations.

This actual or potential impairment of **operations** must be caused by or result from direct physical loss or damage by a **covered peril** to **property**, unless otherwise stated.

*Id.* ¶ 56; Dkt. 1-2 at 60.

Plaintiffs allege the outbreak of COVID-19 caused direct physical loss or damage to the Properties. Compl. ¶ 23. Defendant denied coverage under the Policy for Plaintiffs' claimed losses. *Id.* ¶ 75. Plaintiffs bring this action seeking declaratory relief that they are entitled to coverage for their claims under the Policy and under 28 U.S.C. § 2202. *Id.* ¶ 70.

## DISCUSSION

**I.    Legal Standard**

Under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of claims asserted in a complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

3

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* (internal citations omitted). When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it considers evidence outside the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*

///

///

4

## II.    Analysis

The parties agree that California state law applies to the substantive issues in this diversity action.  Mot. 12-13; Opp'n 5.  Under California law, the interpretation of an insurance policy is a question of law and "subject to the ordinary rules of contractual interpretation." *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 847 (9th Cir. 2020).  Initially, "the burden is on the insured to establish that a claimed loss 'is within the basic scope of insurance coverage.'" *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890 (9th Cir. 2021) (citation omitted). "[O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Id.* (citation omitted).

To be entitled to Business Interruption Coverage under the Policy, Plaintiffs must demonstrate they suffered "direct physical loss or damage by a covered peril to property." Compl. ¶ 56; Dkt. 1-2 at 60.  The Civil Authority provision only provides coverage for business income losses and expenses "due to the actual … impairment of your operations, directly caused by the prohibition of access to your premises" by a civil authority, provided that the "prohibition of access by a civil authority must be the direct result of <u>direct physical loss or damage to property</u>" away from but within one mile of the Property.  Compl. ¶ 59; Dkt. 1-2 at 63 (emphasis added).

Binding appellate authority has interpreted the phrase "direct physical loss or damage" to require "distinct, demonstrable, physical alteration of the property." *Mudpie*, 15 F.4th at 890-92 (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)).  Both the Ninth Circuit and the California Court of Appeal have recognized that business losses resulting from a government closure order issued in response to the COVID-19 pandemic do not qualify as "direct physical loss of or damage to" property.  *Id.* at 892-93; *Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688, 712 (2021) ("[T]he [San Mateo and Monterey County] Closure Orders were issued to prevent the spread of the pandemic, not because of any direct physical loss of or damage to property.").  Indeed, the

5

California Court of Appeal noted in April 2022 that "[a]t this point, there is no real dispute. Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic." *Musso & Frank Grill Co. v. Mitsui Sumitomo Ins. USA Inc.*, 77 Cal. App. 5th 753, 760 (2022).

Plaintiffs argue they have alleged the actual presence of COVID-19 at the covered properties, which is distinguishable from cases where the virus was not present at the subject property. Opp'n 12-13. In *Inns-by-the-Sea*, 71 Cal. App. 5th at 704-05, the court noted that "it could be possible, in a hypothetical scenario, that an invisible airborne agent would cause a policyholder to suspend operations because of direct physical damage to property." *See id.* at 710 n. 21 ("[C]ase law supports the view that in certain circumstances an invisible substance or biological agent might give rise to coverage because it causes a policyholder to suspend operations due to direct physical loss of or damage to property. However, the scenario pled in the complaint does not describe such a circumstance.").

More recently, in *United Talent Agency v. Vigilant Insurance Co.*, 77 Cal. App. 5th 821, 838 (2022), the court held that, unlike environmental contaminants such as asbestos, "the presence or potential presence of the [COVID-19] virus does not constitute direct physical damage or loss." As *United Talent*, *id.*, explained:

> Asbestos in installed building materials … and environmental contaminants … are necessarily tied to a location, and require specific remediation or containment to render them harmless. Here, by contrast, the virus exists worldwide wherever infected people are present, it can be cleaned from surfaces through general disinfection measures, and transmission may be reduced or rendered less harmful through practices unrelated to the property, such as social distancing, vaccination, and the use of masks. Thus, the presence of the virus does not render a property useless or uninhabitable, even though it may affect how people interact with and within a particular space.

The court further dismissed the hypothetical discussed in *Inns-by-the-Sea* as dicta, stating that "a discussion of a hypothetical scenario is not a statement of California law" and recognizing that other courts have rejected similar claims. *Id.* at 839.

Here, Plaintiffs allege the COVID-19 virus was "probably" present on the subject property because: (1) a single employee who was on the premises of Greenblatt's Deli was diagnosed with COVID-19, and (2) hundreds of patrons visited the business each day, such that it was likely infected customers visited the property. Compl. ¶ 64. In *United Talent*, 77 Cal. App. 5th at 839, the court recognized that "cleaning or employing minor remediation or preventive measures to help limit the spread of the virus does not constitute direct property damage or loss." Here, as in *United Talent*, *id.*, Plaintiffs do not allege "that [their] properties required unique abatement efforts to eradicate the virus." *See generally* Compl. As in *Inns-by-the-Sea*, 71 Cal. App. 5th at 703, Plaintiffs cannot reasonably plead that the presence of the COVID-19 virus on their premises is what *caused* the premises to be uninhabitable or unsuitable for their intended purpose. Rather, Plaintiffs "took several measures, including the installation of social distancing barriers and the removal of furniture and work stations to promote and ensure proper social distancing." Compl. ¶ 25. These are forward-looking preventative measures, not remediation due to direct physical damage or loss.

Accordingly, the court finds Plaintiffs have failed to allege losses covered under the Policy, and their claim for declaratory relief fails. Having found that Plaintiffs fail to allege they are entitled to coverage under the Policy, Plaintiffs' second cause of action for appraisal also fails. *See Lee v. Cal. Cap. Ins. Co.*, 237 Cal. App. 4th 1154, 1166 (2015) ("The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.").

/ / /

/ / /

7

## **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendant's Motion to Dismiss in its entirety, as Defendant's denial of coverage did not breach any term of the Policy.  Given that Plaintiffs' claims and supporting legal theories fail as a matter of law, the court finds amendment would be futile and DENIES leave to amend.

IT IS SO ORDERED.

Dated: October 31, 2022

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge